# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**VICTORIA L. BAILEY**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN McLEAN**
Deputy Attorney General
Indianapolis, Indiana



FILED
Jan 31 2013, 9:11 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

BRIAN KENDRICK,                          )
        Appellant-Defendant,          )
              vs.          )     No. 49A05-1206-CR-314
STATE OF INDIANA,                        )
        Appellee-Plaintiff.           )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kurt Eisgruber, Judge
Cause No. 49G01-0806-FA-151081

**January 31, 2013**

**OPINION - FOR PUBLICATION**

**MAY, Judge**

Brian Kendrick appeals his sentence on remand for Class A felony attempted murder,[1] Class B felony robbery,[2] and Class A misdemeanor carrying a handgun without a license.[3] He contends the trial court erred when, after we vacated his two convictions of Class C felony feticide,[4] it again sentenced Kendrick to fifty-three years. We affirm.

## FACTS AND PROCEDURAL HISTORY

We stated the facts underlying Kendrick's convictions in our opinion deciding his first direct appeal:

> On the evening of April 21, 2008, Kendrick and Aaron Stewart came to Aaron Little's garage on the west side of Indianapolis for haircuts. Charles Petty, Little's best friend, was also present. The four men hung out for about an hour. During that time, Stewart and/or Kendrick made references to wanting to rob a bank. Kendrick had a black backpack with him with a Calico semi-automatic pistol inside, an uncommon gun that he had gotten from Stewart several months prior.
>
> Stewart and Kendrick left that evening in Kendrick's blue Trailblazer. They agreed to commit a robbery together the following morning. Little was also apparently in on the robbery at some point. A number of phone calls were made early the next morning between Little and Stewart and Stewart and Kendrick. When Stewart and Kendrick arrived at Little's house that morning, Little refused to participate in the robbery, but he agreed to get a car for them to use. The three men drove together to a gas station where Little met one of his girlfriends, Twaunya Taylor, at about 7:45 to borrow her black Sebring. After he dropped Taylor off at work, Little met Stewart and Kendrick back at his house. Kendrick took possession of the Sebring, and Stewart drove his Trailblazer.
>
> On their way to the bank on the east side, Stewart and Kendrick stopped in a parking lot to solidify their plan for the robbery. The plan was for Stewart to park on the street and wait in his Trailblazer during the robbery. He was instructed to block (with his vehicle) anyone pursuing Kendrick, who was going to flee in the Sebring.

---

[1] Ind. Code § 35-42-1-1 (murder); Ind. Code § 35-41-5-1 (attempt).
[2] Ind. Code § 35-42-5-1.
[3] Ind. Code § 35-47-2-1.
[4] Ind. Code § 35-42-1-6.

That morning, Katherine Shuffield was working as a teller at the Huntington Bank at 21st and Post Road in Indianapolis. There were three other employees present and one patron as Kendrick entered the bank armed with a Calico handgun. He wore a face mask, gloves, and dark clothing to avoid being identified. Kendrick ordered the patron to the floor. Then he attempted to open the gate to the teller area. When he could not open it, he jumped over Shuffield's counter. As the obviously-pregnant Shuffield backed away, Kendrick pointed his gun and shot her in the abdomen. Shuffield fell to the floor screaming for someone to help her and her twin babies.

Without responding to Shuffield's pleas for help, Kendrick moved onto the next two tellers, taking the contents of their cash drawers. He then jumped back over the counter and on his way out fired a shot in the direction of the patron still lying on the floor. Neither the patron nor any of the bank employees were able to identify the shooter.

Upon fleeing the bank, Kendrick ran to the Sebring and drove away, and Stewart drove the Trailblazer. They met at an abandoned house. When Stewart learned that Kendrick had shot someone, he went to his cousin's house to get new clothing for Kendrick. In the meantime, Kendrick opened the bag only to find that a dye-pack had exploded. Kendrick and Stewart eventually went together in the Trailblazer to Stewart's cousin's home.

After several frantic phone calls from Stewart, Little came later that morning to pick up the Sebring on the east side. While Stewart and Little drove from Stewart's cousin's home to the abandoned house, Stewart filled Little in on what had happened. After returning the Sebring to his girlfriend's garage, Little went to Petty's house. He watched the news coverage of the robbery and told Petty about the robbery and his involvement.

Shuffield was seriously injured as a result of the shooting. After two days of surgeries, she began having contractions such that the babies had to be delivered. They were only about twenty-two-weeks gestation. The first twin was stillborn and the second survived only a few hours after delivery.

Leads for the crime were running cold, so at the end of May the bank offered a reward. As a result, Petty provided information to police in early June and gave specific details not previously released to the media. Stewart and Kendrick were subsequently arrested, and upon his arrest, Stewart gave a statement to police implicating himself and Kendrick.

On June 23, 2008, the State charged Kendrick with class A felony attempted murder, class A felony robbery, two counts of class C felony feticide, and one class A misdemeanor weapons charge. Kendrick's five-day jury trial commenced on January 25, 2010. Among others, Little, Petty, and Stewart testified against Kendrick. The theory of the defense was that Kendrick had been set up and was not involved in the robbery. The jury ultimately found Kendrick guilty as charged. The trial court entered judgments

3

of conviction accordingly, except it reduced the robbery conviction to a class B felony to avoid double jeopardy. At the sentencing hearing on February 12, 2010, the trial court sentenced Kendrick to consecutive sentences of thirty years for attempted murder, fourteen years for robbery, four years for each feticide conviction, and one year on the handgun conviction. In all, Kendrick received an aggregate sentence of fifty-three years in prison.

*Kendrick v. State*, 947 N.E.2d 509, 512-13 (Ind. Ct. App. 2011), *reh'g denied*, *trans. denied*, *cert. denied* 132 S.Ct. 1752 (footnotes omitted).

We reversed Kendrick's two Class C felony feticide convictions on the basis of double jeopardy, and remanded for resentencing. We directed the trial court that it may "now consider the victim's pregnancy and the termination thereof in crafting Kendrick's sentence for attempted murder. On remand, however, the court may not impose an aggregate sentence in excess of fifty-three years, as that would raise a presumption of vindictiveness." *Id*. at 514-15.

On remand, the trial court resentenced Kendrick to thirty-eight years for Class A felony attempted murder, fourteen years for Class B felony robbery, and one year for Class A misdemeanor possession of a handgun without a license. The trial court ordered the sentences served consecutively, for an aggregate sentence of fifty-three years.

**DISCUSSION AND DECISION**

When resentencing, a trial court may not "impose a more severe penalty than that originally imposed unless the court includes in the record of the sentencing hearing a statement of the court's reasons for selecting the sentences that it imposes which includes reliance upon identifiable conduct on the part of the petitioner that occurred after the

4

imposition of the original sentence." Ind. Post-Conviction Rule 1(10)(b). Kendrick argues the trial court erred when, on resentencing, it increased his sentence for Class A attempted murder by eight years. We disagree.

On appeal of a sentence, our court "should focus on the forest – the aggregate sentence – rather than the trees – consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). While Kendrick's sentence for Class A felony attempted murder increased from thirty years to thirty-eight years, his aggregate sentence, fifty-three years, did not change. Therefore, the trial court did not impermissibly increase Kendrick's sentence. *See Hicks v. State*, 729 N.E.2d 144, 147 (Ind. 2000) (affirming resentencing of defendant when enhancement increased sentence for murder but aggregate sentence remained the same). We accordingly affirm.

Affirmed.

ROBB, C.J., and PYLE, J., concur.